**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARY GERMAIN,

                        Plaintiff,

        - v -                                            Civ. No. 1:11-CV-0879
                                                                                 (RFT)

MICHAEL J. ASTRUE, *Commissioner of Social Security*,

                        Defendant.

**APPEARANCES:**                                     **OF COUNSEL:**

OFFICE OF STEPHEN J. MASTAITIS, JR.        STEPHEN J. MASTAITIS, JR.
Attorney for Plaintiff
1412 Route 9P
Saratoga Springs, New York 12866

SOCIAL SECURITY ADMINISTRATION          ROBERT R. SCHRIVER, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## **MEMORANDUM-DECISION and ORDER**[1]

In this action, Plaintiff Mary Germain moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[2] Based upon the following discussion, the Commissioner's decision denying Social Security benefits is

---

[1] On November 21, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter. Dkt. No. 11.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 12 & 14.

**affirmed**.

## I. BACKGROUND

Germain, born on December 17, 1968, protectively filed applications for POD, DIB, and SSI on December 10, 2008, claiming an inability to work as of May 28, 2008, due to problems with her right wrist, right knee, asthma, nerve problems, and depression. Dkt. No. 8, Admin. Transcript [hereinafter "Tr."] at pp.81–93, 111, & 117. Prior to that, Germain had been employed as a school monitor and a sales associate. *Id.* at p. 118. The disability applications were denied on initial review. *Id.* at pp. 42–51. On May 18, 2010, a Hearing was held before Administrative Law Judge ("ALJ") Thomas Grabeel (Tr. at pp.17–41), who, on June 9, 2010, issued an unfavorable decision finding that Germain was not disabled (Tr. at pp. 6–16 ). On June 1, 2011, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id.* at pp. 1-4. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and

assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and*

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

*Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Grabeel's Findings

Germain was the only witness to testify at the Hearing. Tr. at pp. 17–41. In addition to such testimony, the ALJ had Germain's medical records consisting of treatment reports and opinions from various treating and/or examining physicians. *Id.* at pp. 175–508. Additional evidence was submitted to the Appeals Council by Plaintiff's attorney after the ALJ rendered his decision. *Id.* at pp. 509–32.

Using the five-step disability evaluation, ALJ Grabeel found that: 1) Germain had not engaged in any substantial gainful activity since May 28, 2008, the alleged onset disability date; 2) she has severe medically determinable impairments, namely degenerative disc disease of the lumbar and cervical spines and cervical strain, but her carpal tunnel, asthma, depression, and anxiety are not considered to be severe impairments; 3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she retains the RFC to perform the full range of light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), and could therefore return to her previous employment as a sales associate and school monitor. *Id.* at pp. 9–16.

### D. Plaintiff's Claims

Generally, Plaintiff contends that the ALJ's decision denying benefits should be reversed because he erroneously determined that she had the RFC to perform the full range of light work. In rendering this argument, Plaintiff lodges a hodgepodge of mostly uncorroborated claims regarding the

ALJ's failure to take into account her treating physician opinions, his erroneous assessment of her credibility and subjective complaints of pain, and his failure to consider her obesity. *See generally* Dkt. No. 12, Pl.'s Br. Because each of these contentions relate to the ALJ's RFC assessment, we consider them together.

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. §§ 404.1545(a) & 416.945(a). If the applicant can perform the kind of work he or she performed in the past, they are deemed not disabled. *Id*. at §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at §§ 404.1545(a)(3) & 416.945(a)(3).

ALJ Grabeel determined that Plaintiff had the RFC to perform the full range of light work as defined by the Regulations, which states:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Id*. at §§ 404.1567(b) & 416.967(b); Tr. at pp. 13-15.

In rendering the RFC assessment, ALJ Grabeel stated that he took into consideration all of Plaintiff's alleged symptoms, to the extent that such symptoms are consistent with the objective medical evidence and other evidence. Tr. at p. 13. He further took into account the opinion evidence, which at the time

he issued his decision consisted only of opinions rendered by consulting physicians. *Id*. After the ALJ rendered his decision denying benefits, Plaintiff's counsel submitted several medical records, including medical opinions from her treating physicians, Paul J. Okosky, M.D., and Todd Jorgensen, M.D. *Id*. at pp. 514–16 & 521–26. Upon review of these reports, which were generated months after the ALJ's decision, the Appeals Council determined that such information did not provide a basis for changing the ALJ's decision. *Id*. at pp. 1–2. We agree.

The medical record before the ALJ consisted of treatment report notes ranging from 2001 through February 2010. *Id*. at pp. 175–508. Because Plaintiff alleges she became unable to work because of her impairments in May 2008, our analysis of the record begins there. In late May 2008, after suffering an injury at work when a box fell and hit her right wrist, Germain visited Wilton Urgent Care complaining of pain and swelling.[4] *Id*. at p. 320. An x-ray taken on that date revealed no fracture and she was discharged with instructions to ice and elevate her wrist. She was also given Naproxen and was restricted from heavy lifting, pushing, pulling, and repetitive use of the wrist. *Id*. She was eventually referred to occupational therapy, which she reported made her feel better. *Id*. at pp. 347 & 351. In July 2008, Germain was diagnosed with tendonitis and was restricted to light duty for two weeks with the expectation that she would be returned to full duty at that time. *Id*. at pp. 345–46. At subsequent examinations conducted by various doctors, Plaintiff consistently displayed full strength and full range of motion in her wrists. *Id*. at pp. 243–45, 420–22, & 485–86. In August 2009, Plaintiff sought treatment for pain in her right hand and forearm. *Id*. at pp. 485–86. Although no one incident precipitated the complaints of pain, Germain divulged that she had been employed by a hotel and performed a lot of heavy lifting. *Id*. at p. 485. Upon examination, no obvious deformity, discoloration,

---

[4] Plaintiff reported that because of this incident, she was fired from her job for failing to follow safety regulations. Tr. at p. 396.

or edema of the forearm, wrist, or hand was detected. *Id*. Strength was normal and sensation and reflexes were intact. *Id*. X-rays were negative, and the clinical impression was a right wrist strain, which was treated with an Ace wrap, and Germain was directed to apply heat and ice several times daily; Ibuprofen and Lortab were also prescribed. *Id*. at p. 486. In October 2009, Plaintiff underwent carpal-tunnel release surgery. *Id*. at pp. 495–500.

With regard to her back pain, the Court notes that Plaintiff's complaints and treatment for her back was intermittent. Notwithstanding the ALJ's finding that Germain's back condition constituted a severe impairment, the Court takes note that examination findings and diagnostic testing were normal or benign. We agree with the Commissioner that Plaintiff was repeatedly assessed as having full muscle strength, intact reflexes, full sensation in her lower extremities, a normal gait, negative straight-leg raising tests, and full range of motion. *Id*. at pp. 244, 421, 477, & 484.

The only relevant opinion contained in the medical record before the ALJ was that furnished by Kenneth D. Stein, M.D., based upon a consulting examination performed on March 4, 2009. *See id*. at pp. 420–22.[5] Prior to Dr. Stein's physical examination, Germain relayed to him that she is able to perform all of her activities of daily living, with the exception of carrying laundry. *Id*. at p. 420. Dr. Stein's examination report contains mostly benign findings: straight-leg raising test was negative on both sides, in both the sitting and supine position, her posture and gait were normal, she was able to walk on her heels and toes without any difficulty, she had full sensation, full motor strength, normal reflexes, full range of motion in her wrists, and full grasp and pinch strength. *Id*. at p. 421. Dr. Stein reported "[t]here are numerous Waddell signs present including shoulder-hip rotation, axial loading and

---

[5] The medical record also contains a Physical RFC Assessment completed on April 9, 2009, by a state agency analyst. Tr. at pp. 451–56. Although the ALJ made no mention of this assessment in his decision, it is worth noting that after reviewing the medical record, including Dr. Stein's examination report, the analyst determined that Germain was capable of performing the demands of light work as defined by the Regulations. *Id*.

distraction."[6] *Id*. Dr. Stein concluded that Germain had chronic intermittent low back pain, with symptoms being aggravated by prolonged sitting, standing, walking, or climbing stairs. *Id*. at pp. 421–22. He also noted that her impairments had been treated conservatively with pain medication and muscle relaxants, but no further treatment nor imaging studies had been performed. *Id*. at p. 422.

In rendering his RFC assessment, the ALJ made multiple references to the medical record and Dr. Stein's findings. The opinion of state agency consultants may constitute substantial evidence to support an ALJ's determination, provided that there is other supporting evidence in the record. *See* 20 C.F.R. §§ 404.1527(e) & 416.927. In light of the discussion above, we find that it was proper for the ALJ to rely upon such findings in rendering Germain's RFC since they are supported throughout the medical record.

Throughout her Brief, Plaintiff persists that the ALJ committed error when he failed to take into account the opinions rendered by her treating physicians, Paul Okosky, M.D., and Todd Jorgensen, M.D.[7] *See generally* Pl.'s Br. However, such medical opinions were not available to the ALJ as they were provided long after the ALJ issued his decision. Nevertheless, we will address this claim of error to the extent Plaintiff claims can be read as attacking the Appeals Council for its failure to reverse the ALJ's decision in light of this new evidence. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (noting that "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's

---

[6] The Commissioner informs the Court that "Waddell's signs are indications that a patient's response to certain movements is inappropriate or unexpected, such as yelling out in pain in response to a very light touch." Dkt. No. 14, Def.'s Br. at p. 3, n.3 (citing Behavenet.com, *Waddell's signs*, at http://www.behvanet.com/waddells-signs & Physiopedia, *Waddell Sign*, at http://www.physiopedia.com/index.php?title=Waddells_Sign).

[7] A record was also submitted from Shawn P. Jorgensen, M.D., who, along with Todd Jorgensen, M.D., works at Adirondack Rehabilitation Medicine. Tr. at pp. 524–26.

decision").

In appealing the ALJ's decision, Plaintiff's counsel submitted several medical records for the Appeals Council to review, including:

1) treatment note from Dr. Okosky, dated June 23, 2010 (Tr. at p. 410);

2) Physical Capacities Evaluation completed by Dr. Okosky on August 27, 2010 (Tr. at pp. 514–16);

3) treatment and assessment note completed by Shawn Jorgensen, M.D., on September 16, 2010 (Tr. at pp. 524–26);

4) treatment and assessment note completed by Todd Jorgensen, M.D., on October 28, 2010 (Tr. at pp. 521–23); and

5) various imaging, including x-ray of lumbar spine and magnetic resonance imaging ("MRI") of cervical and lumbar spine (Tr. at pp. 527–32).

The Regulations provide that when "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970 and 416.1470. First, the Court notes that it is not entirely clear whether any of the newly submitted medical evidence relates to the period on or before the ALJ's decision as directed by the Regulations. Nevertheless, as the Appeals Council noted, there is nothing in these records that would undermine the ALJ's decision.

We first examine the medical records submitted from Dr. Okosky. When Dr. Okosky examined Plaintiff on June 23, 2010, approximately one month after the ALJ issued his decision, he recommended that Plaintiff initiate physical therapy. Tr. at p. 518. Two months later, Dr. Okosky submitted a Physical Capacities Evaluation at the behest of Plaintiff's attorney. Therein, Dr. Okosky proclaims that Plaintiff can sit and stand for a total of six hours in an eight-hour workday (an assessment consistent with the ALJ's finding) and could walk for a total of three hours in an eight-hour

workday. *Id*. at p. 515. He further opined that Germain would need to alternate between sitting, standing, and lying down and that her work-week should be limited to zero days and zero hours. *Id*. Also, Dr. Okosky opined that Germain could occasionally lift five pounds, but not anything heavier. *Id*. Dr. Okosky concluded that Germain's pain is marked and she suffered from a permanent disability. *Id*. at p. 516. At no point does Dr. Okosky identify which impairment causes such limitations, nor does he point to any objective medical evidence that would support his findings. Thus, there is no reason to undermine the ALJ's supported decision based on this assessment.

Next, we turn to the medical records submitted by Drs. Jorgensen. On September 16, 2010, upon referral from Dr. Okosky, Germain was examined by Dr. Shawn Jorgensen for an assessment of her neck and back pain. *Id*. at pp. 524–26. Upon examination, Plaintiff displayed normal gait and posture and she was able to heel, toe, and tandem walk without any difficulty. *Id*. at p. 525. Her cervical range of motion was "diminished in all directions and elicit[ed] pain in all directions," whereas lumbar range of motion was full without eliciting pain in any direction. *Id*. Dr. Jorgensen ordered an x-ray of her lumbar spine and an MRI of her cervical spine and lumbar spine, with a follow-up appointment. *Id*. at p. 526. That appointment occurred about one month later on October 28, 2010, with Dr. Todd Jorgensen. *Id*. at pp. 521–23. This time, Plaintiff's cervical and lumbar ranges of motion were full without eliciting pain. Dr. Jorgensen recommended aerobic exercise and the possibility of a breast reduction. *Id*. at pp. 522–23. Nothing in these reports indicate that Plaintiff would be unable to perform light work, thus, such reports would not form the basis for reversing the ALJ's decision.

In light of the above recitation, we similarly find that the ALJ did not commit any error when he found that Germain's allegations and complaints regarding the intensity, persistence, and limiting

effects of her symptoms were not entirely credible. Under the Regulations, subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a) & 416.929(a). Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination. *Id*. at §§ 404.1529(a), (d) & 416.929(a), (d). A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. *Id*. at §§ 404.1529(c) & 416.929(c). Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work. *Id.* "It is well settled that 'a claimant's subjective evidence of pain . . . is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987). Where the ALJ resolves to reject subjective testimony with regard to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Id*. (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)).

In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
> (v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
> (vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

In his decision, ALJ Grabeel states that Plaintiff's impairments could reasonably be expected to cause some limitations, however, her statements to her treating and examining sources as well as her testimony concerning the intensity, persistence, and limiting effects of these symptoms were not credible. Tr. at p. 14. In support of this finding, ALJ Grabeel cited Dr. Stein's statement that numerous non-organic findings were present during the exam, thereby suggesting exaggeration of symptoms. *Id.* at pp. 14 & 421–22. The ALJ further noted that while Germain claims that her severe symptoms have been ongoing, the medical record reveals that she went long periods of time without complaining about her symptoms and there were significant gaps of time between when she sought treatment for complaints about her back and neck pain. Lastly, the ALJ noted that when Plaintiff complained about her neck and back pain, she received routine care that was conservative in nature and the medications prescribed seem to be effective in controlling symptoms. *Id.* at pp. 14-15. As noted above, the medical record supports the ALJ's findings.

In addition to the fact that the medical record does not support Plaintiff's allegations regarding the intensity and persistence of her symptoms, her reported activities of daily living similarly do not comport therewith. Plaintiff reported that she went to her friends' houses every day and played games,

could travel alone and drive a car, went shopping for groceries for an hour at a time, went for walks, did all household chores (except laundry), played computer games, and was able to care for her self. *Id*. at pp. 127, 128, 129, 130, 131, 136, & 421. The extent of her activities of daily living do not support her contention that her symptoms were as disabling as alleged.

An ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment in light of the medical findings and other evidence. *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999). Furthermore, the ALJ's credibility determination concerning Germain's pain symptoms is entitled to deference on appeal. *Ponte v. Secy' Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (other alterations omitted)). Because the medical record and Plaintiff's activities of daily living do not support Plaintiff's allegations of severe, disabling symptoms, the ALJ was entitled to find that Plaintiff was not entirely credible, and he committed no legal error in doing so.

Lastly, we address Plaintiff's contention that the ALJ did not properly evaluate the effects her alleged obesity has on her ability to perform work-related activities. Again, the medial record does not support Plaintiff's claim. Throughout the medical record, Plaintiff's weight is noted by treating and examining physicians, usually in their observations about her appearance, but not once was her weight diagnosed as a medical condition. The only medical records that comes close to suggesting a link between her back pain and her weight are the records submitted after the relevant time period. And even there, the physicians merely suggest that she could benefit not only from some aerobic exercise, but a breast reduction as well. Simply put, there is no evidence put forth by Plaintiff that supports the notion that her alleged obesity interfered with her ability to perform work-related functions. Thus, no

errors were committed by the ALJ.

### III. CONCLUSION

In determining that Germain was not disabled, we find that the ALJ applied the correct legal standards and that substantial evidence supports his determinations.

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: February 12, 2013
       Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge